**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

FERRELL WALKER,                          *

      Petitioner,                    *

                                Case No. 7:09-CV-90060

vs.                                      *          28 U.S.C. § 2255
                                Case No. 7:07-CR-30 HL

UNITED STATES OF AMERICA,               *

      Respondent.                    *

## REPORT AND RECOMMENDATION

_____Petitioner Walker's Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is under full consideration together with evidence produced at an evidentiary hearing held on December 14, 2009, and Briefs filed by both parties.

### Procedural History

Petitioner Walker waived indictment, entered into a Plea Agreement with the Government and pleaded guilty on August 23, 2007, to an Information charging him with possession of child pornography, in violation of 18 U.S.C. § 2252(A)(4)(B). (Doc. 1, 2, 4, 5). The court held a plea hearing and after examination of Petitioner's understanding of the charges against him, the possible penalties, and his legal and constitutional rights, the court ultimately determined that there was "a factual basis for the plea, that Mr. Walker is, in fact, guilty, and that the plea will be freely and voluntarily entered." (Doc. 23 at18). The court also approved Petitioner Walker's waiver of indictment. *Id.*

On October 15, 2007, the United States, Petitioner Walker and his attorney, filed an Addendum To Plea Agreement (Doc. 13) acknowledging an error in the statement by the Government at the plea hearing as to the statutory length provided for supervised release following

sentence of imprisonment, and stating the proper statutory provision for supervised release provided that the court may impose any term of years. The Assistant United States Attorney, the Petitioner and his counsel all signed the Addendum and filed the same on November 15, 2007. (Doc. 13).

On November 15, 2007, the court sentenced Petitioner Walker to 87 months imprisonment to be followed by a period of 25 years supervised release, and a fine of $2,000. (Doc. 11, 15). Petitioner Walker filed a Notice of Appeal of his sentence to the United States Court of Appeals for the Eleventh Circuit where the same was affirmed on August 20, 2008. (Doc. 34). On August 18, 2009, Petitioner Walker timely filed his Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 presently under consideration. (Doc. 35).

### Petitioner's § 2255 Claims

In **Ground One** of his motion, Petitioner Walker asserts a claim of ineffective assistance of counsel, saying:

> Counsel coerced Petitioner to plead guilty, based on bad advise of "futility" of trial. Attorney Edwards advised petitioner that he has no viable defense and Petitioner's mere viewing of child pornography is a violation of the law, however, there is an off the record promise that Petitioner would receive sentence of 36 months supervised release or in the alternative 24 months in prison with a pardon within the 24 months. Also, Petitioner is to waive his right to be indicted because it will cause undue publicity and petitioner will not receive a fair trial should it proceed to trial.

In **Ground Two** of his motion, Petitioner Walker asserts a claim of ineffective assistance of counsel, saying:

> Counsel permitted Petitioner to plead guilty when court violated Rule 11. Court failed to fully explore the nature of the medication Petitioner was taking at the time Petitioner waived his rights and pleaded guilty. Petitioner's plea was not knowingly and voluntarily given. At the time Petitioner entered his plea, he was under the

2

influence of Zoloft and Collonnapins which was prescribed by a psychiatrist who thought Petitioner was depressed and mentally impaired.

In **Ground Three** of his motion, Petitioner Walker asserts a claim of ineffective assistance of counsel, saying:

> Counsel permitted petitioner to plead guilty when Court violated Fed.R.Crim.P.11. Court failed to provide Petitioner with notice of the special conditions related to the 25 year term of supervised release imposed for Petitioner, offense and conditions were not in the guidelines. Court failed to provide through discussion why it was necessary to take all prescribed medication and require Petitioner to submit to penile plethsmograph testing as special conditions of the 25 year term of supervised release.

Petitioner's **Ground Four** claim of ineffective assistance of appellate counsel was withdrawn from the motion and its consideration by hearing counsel. *See* pp. 18, 19, Evidentiary Hearing Transcript (Doc. 45). Counsel stated, "I had an opportunity to speak with Ms. Hernandez on more than one occasion and after speaking with her, did determine that I would not be going forward with ineffective assistance of appellate counsel." *Id.* at 19.

AUSA Crane volunteered **a ground** not asserted as such from Subsection (F) of Petitioner's § 2255 Motion, which relates only to the Grounds raised on direct appeal of Petitioner's sentence, to wit.:

> The Defendant did not knowingly possess images that he had permanently deleted from his computer nor should such permanently deleted files be deemed images for purposes of sentencing enhancements based on the number of images.

The United States Court of Appeals for the Eleventh Circuit considered the issue on appeal, to wit., whether or not Petitioner's sentence resulted from improper calculation of the child pornographic images counted in the Guideline Sentence range, holding:

> Given the lack of binding authority on the Guidelines-calculation-
> issue presented, we conclude that the district court did not plainly err
> by including previously deleted images in the total number of images
> for purposes of calculating Walker's advisory guideline range.

(Doc. 34 at 4). Petitioner's Hearing Counsel advised that it was Petitioner's position that he was raising the issue at his § 2255 hearing that his counsel provided ineffective assistance relative to failing to object to the manner of calculating the number of images involved in the calculation of Petitioner's Guideline Sentence range. (Doc. 45 at 9, 10). This issue was never pled as a written issue in Petitioner's § 2255 motion nor addressed further with evidence or argument as an issue at hearing. Moreover, this issue was raised by counsel and Petitioner Walker outside his one-year period of limitations and is therefore time-barred in any event. 28 U.S.C. § 2255(f). Nonetheless, the Court of Appeals' decision precludes any ineffective assistance claim in regard to the manner of calculating the pornographic images of children when it ruled that the district court had not erred. Even if Petitioner's plea counsel did not argue this issue, his appellate counsel did (without success according to the holding quoted above) before the Court of Appeals for the Eleventh Circuit. The Court of Appeals held in *United States v. Nyhuis,* 211 F.3d 1340, 1343(11th Cir. 2000):

> The district court is not required to reconsider claims of error
> that were raised and disposed of on direct appeal. *United States
> v. Rowa,* 663 F.2d 1034, 1035 (11th Cir. 1981). "[O]nce a
> matter has been decided adversely to a defendant on direct
> appeal it cannot be re-litigated in a collateral attack under
> section 2255." *United States v Natelli,* 553 F.2d 5, 7 (2nd Cir.
> 1997).

There is no claim of ineffectiveness made against appellate counsel, and plea counsel cannot be considered ineffective for failing to raise claims that lack merit. *See Alvord v. Wainright*, 725 F.2d 1282, 1291 (11th Cir. 1984). This claim is also barred, therefore, by the law of the case

doctrine. Petitioner may not change the standard of review on a claim decided adversely to him on direct appeal and re-litigate it as an ineffective assistance of counsel claim. *Natelli,* 553 F.2d at 7.

## Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a movant bears the burden of establishing by a preponderance of the evidence that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000). To establish deficient performance, a defendant must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. There is a strong presumption that the challenged action constituted sound trial strategy. *Chatelain v. Singletary*, 89 F.3d 749 (11th Cir. 1996). In order to show that counsel's performance was unreasonable, a petitioner must show that no competent counsel would have taken the action in question. *Van Poyck v. Florida Department of Corrections*, 290 F.3d 1318 (11th Cir. 2002). To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have been different. *Mills v. Singletary*, 63 F.3d 999 (11th Cir. 1995); *Meeks v. Moore*, 216 F.3d 951 (11th Cir. 2000). If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the Strickland test. *Holiday v. Haley*, 209 F.3d 1243 (11th Cir. 2000).

The two-pronged *Strickland* test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S. Ct. 366 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same: the attorney's conduct must be

shown to have fallen outside the range of reasonable conduct.  *Hill,* 474 U.S. at 58.   Counsel need

only provide a client who pleads guilty with an understanding of the law in relation to the facts, so

that the accused may make an informed and conscious choice between accepting the prosecution's

offer and going to trial.  *Wofford v. Wainwright,* 748 F. 2d 1505, 1508 (11th Cir. 1984).  The second

prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance

affected the outcome of the plea process.  *Hill,* 474 U.S. at 59.  In other words, in order to satisfy the

prejudice requirement, Petitioner must show that there is a reasonable probability that, but for

counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial.

*Id.*

## Conclusion of Fact and Law

**1.**  In the first of three contentions contained in Petitioner's Ground One claim of ineffective

assistance of counsel, Walker asserts that counsel coerced Petitioner to plead guilty, based on bad

advise of "futility" of trial; that Attorney Edwards advised petitioner that he had no viable defense;

and that Petitioner's mere viewing of child pornography was a violation of the law.

At the § 2255 evidentiary hearing on Petitioner's Motion, Petitioner's Attorney Edwards

testified as to Petitioner's claim of his advise of futility of trial and any viable defense as follows:

> I never advised him that he could not have a trial.  Mr. Walker did not
> want a trial.  As far as any viable defenses, I told him that we could
> go to trial, and we could attempt to demonstrate to a jury that you did
> not - - that you did not put these images on your computer, that you
> did not know they were there, and that you're not interested in child
> pornography, that that was not - - and he would not have been able to
> testify to that is my understanding, that he was interested and did
> purchase this child pornography. ... He felt the trial would be futile.
> I explained to him that I did not think it would be in his best interest
> to go to trial, but that he absolutely had the right.  I thought that if he
> did download these images and possess them, that he needs to plead

6

guilty and admit that he did, in fact, do that. ... I don't ever recall telling him that [the mere veiwing of child pornography is a violation of the law. Even if I did, I'm not sure if that would be incorrect under the circumstances present here because he had downloaded these images and was viewing them, and to view them you have to be in possession of them under the circumstances present here.

*Id.* at 30, 31, 32. Counsel also acknowledged that he was aware that the Government's evidence was that Petitioner's personal computer was found to contain the prohibited items, and that prior to Petitioner's plea agreement, he had admitted to him that he had, in fact, downloaded those items, but that it was his position that he was not specifically interested or titillated by the more graphic images, but that he knew that those would be contained in the packages that he bought off the internet. *Id.* at 32. On cross-examination, Attorney Edwards was asked if he told Mr. Walker that he would not receive a fair trial and that he did not have any viable defenses, to which Attorney Edwards answered:

No, I never used that term [would not receive a fair trial]. I spoke with him, and I told him that if you go to trial on these sorts of charges, and they show the images that I saw that were found on your computer, it's hard to overcome that. You know, that's a very damaging thing, and those are on your computer, and that they had receipts from where he had purchased child pornography from known child pornography sites. I tell a lot of people that they're entitled to a fair trial, but they're not entitled to an acquittal. ... I told him that if he were to take the stand and testify that he didn't mean to purchase these - - which really wasn't what he was telling me. He told me he intended to purchase child pornography. But given that, I didn't see much of a viable defense to it, and I thought it would be very difficult to present one without him testifying as to something like that, something that would be exonerating.

*Id.* at 35. Attorney Edwards also testified on cross-examination that he had reviewed the

statute for possession of child pornography with Petitioner Walker, and explained each element of the charge, and explained that the meaning of *knowingly possessing child pornography* was, "That you go and purchase child pornography, and you understand and contemplate doing it, and it's intentional." *Id.* at 37. Petitioner Walker's § 2255 hearing counsel asked Mr. Edwards if he had told Walker that his going to these web sites and viewing child pornography made Walker guilty, to which Attorney Edwards answered:

> I don't think I said - - It wasn't just viewing in this case. It was him purchasing it, downloading it, and storing it. He purchased zip files of child pornography that included the sado-masochistic images, the prepubescent images, and that would make you - - I would never say it makes you guilty. I would say that it would be difficult for me - - that if the U.S. Attorney were to prove that, present evidence that you had gone and purchased child pornography, that it would be difficult, if not, you know, very hard to convince a jury that you were innocent of possession of child pornography when you purchased it knowingly.

*Id.* at 37, 38. When asked about whether he told Petitioner Walker that he was guilty because he was a member of child pornography sex sites, Attorney Edwards answered:

> Well, not just being a member of it. I mean, he was purchasing it from those sites and downloading it from those sites based on my review of discussions with him and the evidence. ... And I wouldn't have said it would have made him guilty. I would have said something more along the lines of, if the government presents evidence that shows that some - - that you went online to Web sites that contained child pornography and used a credit card, which there was evidence that his credit card was used, ... was used to purchase packages of child pornography, it would be very difficult, especially with you telling me that you did do that, Mr. Walker, that to prove that you're innocent to a jury, it would be difficult. But it's his right to a trial. I did not - - He did not want a trial, ever. ...

8

[W]hen they did the forensic search of his computer, I mean, he visited sites that were called, My Illegal Pedophile Web Site. He had downloaded zip files that said, you know, - - just the names meant that you knew you were buying child pornography. He had searched, I believe, the search terms he had used on his computer when they did the analysis of his computer show that he was searching for terms like - - like did a - - ran Google searches for child pornography and things like that, and I thought the evidence was pretty weighty. ... And he admitted that he did it to me. ... He admitted that to me [that he had purchased some memberships to child pornography sites] yes and the evidence reflected that, the discovery.

*Id.* at 38, 39, 40. When asked on cross-examination about the images he saw in the discovery from the Government, Attorney Edwards stated:

I saw some images that contained prepubescent teens and sado-masochistic imagery, yes. ... In speaking with Mr. Walker as to why all of these images were in the unallocated space, he explained that he un-installed the Windows operating system and then reinstalled it just prior - - just prior to the search warrant day before. ... He never said the computer crashed. He said that all of his child pornography came up on the front of the screen. And I don't know if he did it because he was scared that his wife would see it, or he just did it because he thought it would be a good way to hide the fact that he had downloaded all of that. But he told me that he had called somebody - - Dale - - whoever it was, I don't know, and they advised him to uninstall the operating system, to delete[1] everything, and then reinstall it, I guess, with the actual CD ROM.

*Id.* at 45, 46. The only other evidence proffered in support of Petitioner Walker's claim that his counsel had coerced him into pleading guilty, based on futility of trial, and that counsel advised

---

[1] "When files are "deleted" - either manually by the computer user or automatically by the Internet browser or operating system- they are not actually removed from the computer's hard drive. Rather, the space the files occupy on the disk is tagged by the operating system as "unallocated," such that when disk space is needed in the future, the space occupied by the deleted files is available for use. It is not until the computer later saves different data in the same location as the deleted files that the deleted files are truly removed from the disk. *United States v. Patrick,* 2010 WL 346385, n. 3 (C.A 11 (Ga.)).

petitioner that he had no viable defense, because Petitioner's mere viewing of child pornography was a violation of the law, is Petitioner's testimony at his § 2255 motion hearing. On direct-examination, Petitioner Walker first acknowledged that he entered a plea of guilty to possession of child pornography, and explained that he did so "because I was advised by Mr. Edwards that I had bought the child pornography, I had viewed the child pornography, and I was guilty, and by my means - - from my understanding that viewing was knowingly possessing it." *Id.* at 81, 82. [Note the Walker does not assert that Attorney Edwards advised him whether or not viewing child pornography was knowingly possessing it.] Walker acknowledges that he explained to Mr. Edwards that he bought the child pornography and that he viewed it, and based on that he decided that he should enter a plea of guilty to possession of child pornography. *Id.* Walker states further that, since his conviction and sentencing, he has found out that just viewing child pornography was not a crime. He states:

> No. As a matter of fact, the way the statute reads is knowingly possessing. You can buy it, you can view it. As a matter of fact, Congress has just amended the statute to entail viewing now. Beforehand the statute did not criminalize viewing. So, [on June 10 2005] I was not [knowingly possessing child pornography]. ... [A]t the time I thought - - I was under the impression that viewing was possessing. ... I was under the impression that, like I said, that possessing - - or, excuse me, that viewing was possessing, so that's why I entered into the plea agreement. Mr. Edwards told me that he went and viewed the images, the government had the images, and that's all it was around, you know, I was guilty, and the best and the prudent thing for us to do was enter into this plea agreement. ... Knowing what I know now [against counsel's advice to enter a plea, I would have gone to trial].

*Id.* at 83, 84. Petitioner Walker told Assistant United States Attorney Crane much the same on cross-examination. The exchange between Crane and Walker was as follows:

> CRANE: Now, on direct you testified to the effect - - and these are

my notes - - that I downloaded it, I viewed it, and I'd bought it. Was that the gist of your testimony on direct? ...

WALKER: No, sir. I said that I bought it, I viewed it - - I bought it, I viewed it, and I was guilty.

CRANE: And then later counsel asked you about it, and when you - - my understanding when you're referring to "it," you did not mean child pornography, but meant - -

WALKER: **No, sir. I meant specifically child pornography. I bought the child pornography, and I viewed the child pornography.** (emphasis added). ...

CRANE: And you did so on your computer in your apartment in Valdosta?

WALKER: That is correct, Mr. Crane.

CRANE: I am still confused. Your contention is that you bought it, you downloaded it, you viewed it, but perhaps you did not legally possess it. Is that your claim?

WALKER: No, sir. My claim is that I bought it and I viewed it. You know, viewing is not necessarily possessing it. As I explained earlier, Congress just amended the statute to viewing. I believe it was prior to `08, that was not included in the statute. Knowingly possessing was in the statute, and as far as now, as far as 2252(a)(5)(B), 2252(a)(4)(B), both of those statutes have been amended to include the word viewing in them now, with intent to view. Prior to that there was no mention of viewing in there, just strictly knowingly possess - - knowingly possessing.
...
CRANE: Okay. Do you recall making searches using a Yahoo search engine for items such as preteen Web cams?

WALKER: Yes, sir.

CRANE: Child porn in Czech Republic?

WALKER: Yes, sir.

CRANE: Child sex in Romania?

WALKER: Yes, sir.

CRANE: Teen Web cam picks?

WALKER: Yes, sir.

CRANE: And others along those lines?

WALKER: Yes, sir.

*Id.* at 98, 99, 100, 101.  Petitioner Walker's position seems to be clarified now.  What he contends is that he was under the impression that viewing child pornography was "not necessarily" possessing child pornography, and although he did buy the child pornography and did view it, he did not possess it, because just viewing child pornography had not at that time been statutorily criminalized.  This exercise in semantics must suffer close attention.

The statute under which Petitioner Walker was charged with Possession of Child Pornography, and of which he was convicted and sentenced as the result of his guilty plea, to wit., 18 U.S.C. § 2252(a)(4)(B), until 2008, provided:

> Any person who – knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct.

Petitioner Walker has repeatedly acknowledged to everyone that he bought child pornography off the internet by use of his own computer and that he viewed it on his own computer.  It must be noted that the above statute places no time limit on the possession of the images of child pornography.  So long as the child pornography, which Petitioner had purchased, was on his computer being, it was possessed by him, whether he viewed it, filed it, archived it, or deleted it, to the extent that he could.

On October 8, 2008, Public Law 110-358, § 203, went into effect, having been enacted by Congress and signed by then-President Bush. This is the amendment to which Petitioner Walker has referred, which inserted new language into 18 U.S.C. § 2252(a)(4)(B) (and elsewhere), so that the amended § 2252(a)(4)(B), pertinent to Petitioner's case, now reads:

> Any person who – knowingly possesses, <u>or knowingly accesses with intent to view</u>, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct. (new language underlined).

The new language makes no change in the element of "knowingly possesses" in the statute, but rather, as the word "*or*" clearly indicates, creates an alternative and an additional means by which the statute may be violated. So, when Petitioner Walker bought the child pornography and received it into his computer, he had violated the statute in question, and it was never essential that he view the child pornography, although he repeatedly tells the Court that he did. The fact that he did view the child pornography on his own computer only serves to confirm that he possessed it to such extent that he could view it or do with it what he would, as he possessed it as long as it was on his computer as the product of his purchase. *See United States v. Kain,* 589 F.3d 945, 950 (8th Cir. 2009)("The presence of child pornography in temporary internet or orphan [unallocated] files on a computer's hard drive is *evidence* of prior possession of that pornography .... 'constructive possession of contraband is established when a person has ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.' *United States v. Cortez,* 935 F.2d 135, 143 (8th Cir. 1991))". "A computer user who intentionally accesses child pornography images on a web site gains actual control over the images. ... ." *Id.*

The October 8, 2008 amendment to 18 U.S.C. § 2252(a)(1)(B) cannot have effected Petitioner Walker's conviction or sentence in any manner as it was not in force and effect on either the date of his plea or sentence, and the statute contains no provision for retroactive effect. So, *knowing what he knows now* is a hollow threat. He is mistaken in *what he thinks he knows now.* Nothing has changed his circumstances at the time of his plea and certainly there cannot have been any ineffective assistance of counsel in regard to a provision of law added, in the alternative, to the statute in question, enacted after his plea and after his sentence. His argument that viewing is "not necessarily" possessing, viewed in the context of the evidence and admissions that he bought child pornography off the internet with his computer, as he admits repeatedly, and viewed it on his computer, and attempted to delete it from his computer shortly before a search warrant (which he has not contested) was executed upon his residence and which reveal more than 600 images of child pornography on the orphan or unallocated spaces of his computer's hard drive, all belies the current contention that somehow Petitioner Walker did not knowingly possess child pornography. He, in fact, knowingly possessed child pornography until law enforcement agents took control of Petitioner's computer pursuant to the search warrant and the forensic scientist lifted the child pornography images from Walker's computer, pursuant to the search warrant. Petitioner incorrectly interprets the 2008 amendment to the statute under which he was charged and convicted. This court should not be taken as so foolish. There is no truth nor merit in Petitioner's present allegations.

**2.** In the second part of his Ground One, Petitioner Walker contends that there was an **off the record promise** that Petitioner would receive a sentence of 36 months supervised release or in the alternative 24 months in prison with a pardon within the 24 months. This contention is refuted

by the record. The first flaw is that there can be no straight sentence of supervised release. By simple definition, a release must be from something, *e.g.*, release from a term of imprisonment. Secondly, Petitioner's plea counsel, Mr. Edwards testified unequivocally that Petitioner Walker's claim that there was an off the record promise that he would receive a sentence of 36 months supervised release or in the alternative 24 months in prison with a pardon within the 24 months, was, according to Attorney Edwards, "[a] lie. That is not true at all. I never said that. ... I never told Mr. Walker that." Section 2255 Hearing Transcript (Doc. 45) at 32, 33. Attorney Edwards added later in his testimony that:

> I never told him [probation was] likely. I told him there was a 90 percent chance - - I said a 99 percent chance he's going to prison. In talking with him afterwards, he told me that he wished the judge would have gone to maybe three to four years instead of five or six, and I agreed with him. ... But I never promised him probation or said it was likely.

(Doc. 45 at 50, 51). Attorney Edwards added that he never told Walker that he could get a sentence of 24 months in prison. *Id.* at 51. On cross-examination, Attorney Edwards was asked if he had ever told Petitioner Walker that he would receive probation, to which he answered, "I never told him he would receive probation. I never made any guarantee like that." Edwards was then asked, "Do you recall ever telling his brother Daniel Walker that Mr. Ferrell Walker would receive probation?" Edward responded, "I never told him either that - - I never made any guarantees as to sentence whatsoever." (Doc. 45 at 55). Counsel had already stated that she intended to call Daniel Walker to testify, the court was alerted to the possibility of a strong point on credibility. *Id.* at 5.

Mr. Daniel Walker *was* called to testify by Attorney Williams following the testimony of Attorney Edwards, and was asked if he had had any contact with Attorney Edwards and what was his understanding of the sentence his brother was to receive. Daniel Walker answered:

> I spoke with him on the phone once briefly, maybe five or 10 minutes before my brother entered his plea, and then I met him the day of the sentencing. ... It was my understanding in talking with Mr. Edwards that the reason ... my brother was taking the plea was to take the minimum sentence or the five years off the table which opened up the possibility or the likelihood that he could get probation. ... [T]he morning of the sentencing, Mr. Edwards was upbeat and seemed like probation was an option and was likely. ... Mr. Edwards did not specifically say, I think your brother is going to get probation, but when we discussed the possibility of probation, he seemed like it was a good possibility. Now, did he specifically say it? No.

*Id.* at 77, 78. Mr. Daniel Walker's testimony does not support Petitioner's contention that he was promised probation or supervised release or in the alternative a 24 month prison sentence. Moreover, upbeat being synonymous with hopeful, counsel cannot be found ineffective for going to court hopeful of a favorable outcome to his client's case.

Attorney Williams called Petitioner Ferrell Walker to testify as to the promise of supervised release or the probation that Petitioner asserted had been promised, asking him what sentence he expected. Petitioner Walker answered:

> I expected a sentence of three years probation. I was told [by Mr. Edwards] there was a deal worked out for me to get three years probation or a suspended sentence of 24 months.[2]

*Id.* at 84. When asked by his hearing counsel, if his plea agreement mentioned anything about three years probation or a sentence of 24 months, Petitioner Walker answered, "No, it does not." *Id.* Walker also acknowledged that his plea agreement specifically stated that the sentencing was up to the court's discretion. His counsel then asked:

---

[2]It must be noted that this is the first occasion that a "suspended" sentence was mentioned in the record or in Petitioner's § 2255 Motion.

> Why would you think that you would get three years probation or a suspended sentence of 24 months given the plea agreement you signed.

*Id*. Petitioner Walker answered:

> I was going on the advice of counsel. I was told to answer yes or no, the plea was procedure. ... that the plea was just a procedure and basically a ceremony.

*Id*. at 85. Petitioner's counsel asked him, "So prior to sentencing, you ... thought you were getting probation?" Walker answered, "I thought I was going to receive a term of supervised release. ... Mr. Edwards had told me I was going to receive a term of supervised release. I was a first offender and had no real criminal background. ... He said he had a deal worked out for me to receive probation." Attorney Williams asked, "With who?" Walker answered, "I don't know. All I knew then, I knew there was a deal worked out for probation, and that was good enough for me." *Id*. at 88. ... "You know, as far as I knew, Mr. Edwards had everything worked out." His counsel asked, "What do you mean by that?" Walker answered, "Well, the term of supervised release." *Id*. at 94.

To say the least, Petitioner Walker's explanation of what he expected his sentence to be was everchanging, but of more consequence, it is in complete conflict with his written plea agreement, and his plea colloquy with Judge Lawson at his plea hearing. In his § 2255 motion and at hearing thereon, Walker would now recant all admissions, stipulations, and acceptance of responsibility, as well as the inculpatory statements made to the District Judge at his plea hearing. We have the proverbial dilemna- whether he was being truthful then, or whether he is being truthful now. His former contentions and now his present contentions

are 180 degrees apart and cannot both be true. After examination of Petitioner's statements in his signed and initialed Plea Agreement and those in his sworn statements to Judge Lawson at his plea hearing, a determination of his credibility and the basis for same will be discussed.

## The Plea Agreement

In his Plea Agreement submitted to the court on August 23, 2007, (Doc. 4), Petitioner Walker acknowledged in paragraph (1) thereof that he had reviewed and discussed the charges against him with his attorney and that his attorney had explained his understanding of the Government's evidence against Petitioner Walker. In paragraph (2) thereof, Petitioner Walker stated that he understood his right to plead not guilty and be tried by jury; that he understood that at a jury trial he would have the presumption of innocence and the Government would have the burden of overcoming that presumption with the presentation of evidence of his guilt beyond a reasonable doubt; that he understood that at all times, he would be entitled to the services of an attorney; that he understood that he and his attorney would have the right and be given the opportunity to confront and to cross-examine all of the Government's witnesses and evidence; that he understood that he could present evidence and witnesses on his behalf; that he could testify or remain silent without penalty, because he could not be compelled to testify. He stated that he was satisfied with the services of his attorney and that he knowingly and voluntarily waived his right to plead not guilty and to proceed to trial. Further, Petitioner Walker, in the paragraph (2) of the Plea Agreement, expressly waived any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertained to sentencing in his case. In paragraph (3) of his Plea Agreement, Petitioner Walker stated that, being fully cognizant of his rights and in exchange for the considerations made by the Government set forth in paragraph (4) of the Plea Agreement, agreed as

follows:

> **(A) The Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to the Information which charges defendant with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).**
> **(B) That Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant to a maximum possible sentence of Ten (10) years imprisonment, a maximum fine of Two Hundred Fifty Thousand Dollars ($250,000), and a term of up to three years of supervised released.[3]** (emphasis in original). ...

> (C) The Defendant acknowledges and understands that the Court is not bound by any estimate of the probable sentencing range that Defendant may have received from Defendant's counsel, the government, or the Probation Office. The Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea because Defendant has received an estimated guideline range from the government, Defendant's counsel, or the Probation Office which is different from the guideline range computed by the Probation Office in the Pre-Sentence Report and found by the Court to be the correct guideline range. **...**

> (E) Defendant understands and has discussed with defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range. ...

> (4)

> In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:
> **(A) That he will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought solely in this district against the Defendant.** (emphasis in original). ...

---

[3]The Plea Agreement statement that the period of supervised released was up to three years was in error. The correct term of supervised released authorized by 18 U.S.C. § 3583(k) was "any term of years or life." The correction of that error was and will be discussed later in this report.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between the Defendant and the United States, and no other **promises** or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. **In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.** (emphasis added). ...

(7)

... the United States Attorney and the Defendant stipulate and agree to the following:

On June 10, 2005, agents of the Department of Homeland Security, Immigration and Customs Enforcement (DHS-ICE) executed a search warrant at the residence of defendant Ferrell Walker in Valdosta, Georgia. During the search agents seized a Dell personal computer. Walker voluntarily left work and came to his residence in order to be present during the search. The defendant was not in custody. He made the following statements to law enforcement agents. Walker stated that his wife and child were out of the country and that the was the sole user of the computer. He stated child pornography would not be found on the computer.
An analysis of the computer showed that it had been used within the 24 hour period before the search to access and view child pornography via the internet. The images were transported in interstate commerce via the internet.

A forensic review of the computer seized from the defendant's residence revealed over 600 images of child pornography: either the lewd display of genitals or depictions of minors engaged in sex acts with adults or other minors. Of these images at least 24 were of identified or known victims. The images also depicted prepubescent minors and sado-masochistic conduct.

Plea Agreement (Doc. 4).

The error in the statement as to the authorized period of supervised release following any

term of imprisonment upon conviction and sentence was discovered and an Addendum to the Plea Agreement was prepared. It was signed by the AUSA, the Defendant and his Attorney on November 15, 2007, and filed on that date. (Doc. 13). The Addendum correctly specified that the authorized term of supervised release following any sentence of imprisonment in the case would be *any term of years* as provided by statute.

Petitioner Walker contends in his Memorandum that his counsel was ineffective for allowing him to sign the Addendum correcting the term of any supervised release following a sentence of imprisonment. However, Attorney Edwards rendered a full and reasonable explanation of the strategic decision not to contest the proper term for supervised release for the offense charged and in face of the circumstances of Petitioner's case.

When asked about an error having been made by Assistant United States Attorney Crane as to the correct term of supervised release following a sentence for violation of 18 U.S.C. § 2252(a)(4)(B), Attorney Edwards testified at Petitioner's § 2255 hearing as follows:

> As I recall, I believe that in the initial plea agreement that the term of supervised release was incorrectly stated. You brought that to my attention, I believe, at sentencing and proposed an addendum which included the correct statutory provision for supervised release. I explained that to Mr. Walker, and we both agreed that it was the correct term of supervised release by statute, and that I thought it was in his best interest to accept that addendum. The reason I though that was because I thought the Judge would give him a lesser term of incarceration if he knew he could give him as much supervision as he wanted to.

Attorney Edwards' strategic decision, whether or not he actually had a right to object to the use of an incorrect term of supervised release, is found to be very reasonable. His client had pleaded guilty, because, as he had told the Judge at his plea hearing, he was, in fact, guilty of the charge

against him, and was throwing himself on the mercy of the court, as he did during allocution before sentence was passed. Counsel had reason to believe that the sentencing judge might well feel the he could maintain sufficient controll over Petitioner by issuing a moderate sentence of imprisonment and follow it with a lengthly supervised release term. Petitioner Walker has not shown this to be unreasonable legal strategy, and therefore, has not demonstrated ineffective assistance of counsel.

### The Plea Hearing

The plea hearing (Doc. 23), held on August 23, 2007, began with the Deputy Clerk administering an oath to Petitioner Walker, after which the court asked:

> Mr. Walker, you've just taken an oath to tell the truth in this proceeding, and I assume that you will do that, but I want you to understand that should you not tell the truth, you will subject yourself to a charge of perjury which is in itself a felony. Do you understand that?

Petitioner Walker responded, "Yes, sir." *Id.* at 2, 3. The Court then posited:

> This is case number 7:07-CR-30 ... In this case the United States Attorney has filed an information against you. This information charges in Count One that: On or about June 10, 2005, in the Valdosta Division of the Middle District of Georgia and elsewhere, you, Ferrell Walker, did knowingly possess any visual depictions that had been mailed, shipped, and transported in interstate and foreign commerce by any means including by computer, the production of such visual depictions having involved the use of minors engaged in sexually explicit conduct as defined in Title 18 United States Code, Section 2256(2), and such depictions were of such conduct, all in violation of Title 18 United States Code, Section 2252(a)(4)(B). Do you understand this charge?

Petitioner Walker answer, "Yes, sir." *Id.* at 3. After questioning Walker about his understanding of his rights regarding pleading not guilty, having the assistance of an attorney, having a jury trial, being presumed innocent until proven guilty beyond a reasonable doubt, and other rights which will be discussed later, the Court asked Petitioner Walker, "If you plead guilty, will you do so freely and voluntarily?" Walker answered, "Yes, sir." The Court asked, "Has anyone threatened you or

frightened you *or done anything else* in an attempt to force you to plead guilty?" (emphasis added).

Walker answered, "No, sir." ... The Court asked, "Other than what Mr. Crane has promised that he

would do for you,[4] *has anyone  else made any promise or done anything else in an attempt to*

*induce you to plead guilty*?" (emphasis added).  Walker answered, "No, sir."  *Id.* at 9, 10. ... The

colloquy continued as follows:

> COURT: Are you pleading guilty because you are, in fact,  guilty?
>
> DEFENDANT: Yes, sir.
>
> COURT: And do you now admit that you did, in fact, commit the offense charged in this information as I've read it to you?
>
> DEFENDANT: Yes, sir.
>
> COURT: Is there a plea agreement, Mr. Crane?
>
> MR. CRANE: Yes, there is.
>
> COURT: Mr. Walker, the plea agreement will contain a stipulation of fact to which you agree by signing the plea agreement.  I'm going to ask Mr. Crane to read that now, and I'm going to ask you to listen carefully to what he reads.
>
> DEFENDANT: Yes, sir.
>
> MR. CRANE: On June 10, 2005, agents of the Department of Homeland Security and Immigration and Customs Enforcement executed a search warrant at the residence of Defendant Ferrell Walker in Valdosta, Georgia.  During the search, agents seized a Dell personal computer.  Walker voluntarily left work and come to his residence in order to be present during the search.  The defendant was not in custody.  He made the following statements to law enforcement agents.  Walker stated that his wife and child were out of the country and that he was the sole user of the computer.  He stated that child pornography would not be found upon the computer.
>
>   An analysis of the computer showed that it had been used within the 24 [hour] period before the search to access and view child

---

[4]The Assistant United States Attorney's promise to Petitioner Walker is contained in the Plea Agreement as paragraph (4) quoted above.

> pornography via the internet. The images were transported in interstate commerce via the internet.
>
> A forensic review of the computer seized from Defendant's residence revealed over 600 images of child pornography, either the lewd display of genitals or depictions of minors engaged in sex acts with adults or other minors. ... Images also depicted prepubescent minors in sado-masochistic conduct.

Upon further questioning, Petitioner Walker swore to the Court that he understood the stipulation that the Court had had Mr. Crane read; that he agreed with what Mr. Crane had just read; that it was true and accurate; that the stipulation that Mr. Crane had read did truly describe what took place in the case; and that it truly described his (Petitioner's Walker's) conduct in the case. *Id.* at 12, 13, 14. The colloquy continued with the Court asking and Petitioner Walker answering under oath that he identified the plea agreement as his plea agreement, which he had read himself, understood, had no questions about, had discussed it with his lawyer, signed, initialed on every page, and acknowledged it as his complete agreement with the government. *Id.* at 14. The Court then asked Petitioner Walker, **"Is there any part of your agreement with the government that is not contained in that document?"** Petitioner Walker answered, **"No, sir."** *Id.* at 15. (emphasis added).

Later in the plea hearing, the Court stated to Petitioner Walker:

> I want to advise you that you may not rely on any estimate made by anyone at this time as to what your sentence may be, and you should not enter a plea of guilty in reliance on any such estimate. ... It is possible that the presentence report could contain material about you which you do not now anticipate, but which could cause your sentence to be more severe than you now believe. Do you understand that?

Petitioner Walker answered, "Yes, sir." *Id.* at 17.

Petitioner Walker's sworn responses and acknowledgments given at his plea hearing and the stipulation and provision which he made in his Plea Agreement with the Government, together with his conflicting testimony at his § 2255 Motion hearing, belie his present claims of a promise of a

supervised release without a prison term, a suspended sentence, or a probated sentence, or any promise whatsoever not contained in the Plea Agreement, upon which he relied in entering his guilty plea. The inconsistency of his testimony, his demeanor in testifying, and his unsupported claims of off the record promises, result in the determination that Petitioner Walker's testimony at his § 2255 hearing lacks credibility. His claim of a promised sentence of supervised release without a prison sentence, probation, a suspended sentence, or any sentence promise whatsoever, is completely without merit.

**3.** The third part of Petitioner's Ground One asserts, "Also Petitioner is to waive his right to be indicted because it will cause undue publicity and Petitioner will not receive a fair trial." It is assumed Petitioner is alleging that his counsel advised waiver of indictment and that such advice was a part of counsel's coercing Petitioner Walker to plead guilty in this case. This issue was investigated first at Petitioner's plea hearing on August 23, 2007. (Doc. 23). The court stated to Petitioner Walker:

> I mentioned a moment ago that the case is before the court on what's called an information. The information, of course, is a document. It is an informal way of bringing the charges before the court. It is prepared and signed and filed by the United States Attorney. The formal method of bringing criminal charges into court is to first present the charge - - present the case to the grand jury and have the grand jury return an indictment against you, and then that indictment would be filed. Do you understand what I mean when I refer to the grand jury and to the process of being indicted by the grand jury?

*Id.* at 6. Petitioner Walker answered, "Yes, sir." *Id.* The court continued:

> The grand jury has not considered this specific charge against you, and you have the right to insist that that first be done before you plead either guilty or not guilty to the charge. You may exercise this right freely, without any fear that in so doing you will harm yourself in the eyes of the court in any way. That is to say, it makes absolutely no difference to me whether you do that or not. And I'm telling you all of this because you've indicated that you wished to plead guilty, and I cannot accept a guilty plea from you unless you first waive and give

> up your right to be indicted by the grand jury. So I ask you now: Do
> you at this time freely and voluntarily, and understanding what you
> are doing, waive and give up your right to be indicted by the grand
> jury on this charge?

*Id.* at 6, 7. Petitioner Walker and his counsel separately and individually responded that they did

freely and voluntarily and understandingly waive the right to be indicted by a grand jury. *Id.* At

hearing on Petitioner Walker's § 2255 motion, Attorney Edwards was asked about Petitioner's

statement that "petitioner is to waive his right to be indicted because it will cause undue publicity,

and petitioner will not receive a fair trial should it proceed to a trial," and he answered as follows:

> The only reason I told him that that would be an available course of
> action was because his positon from the moment he hired me was that
> he wanted to try and take responsibility for what he did do and to
> mitigate his exposure as far as sentencing goes. The reason we did
> proceed by an indictment rather than an information because, like I said
> before, I thought the information was for a lesser offense that carried
> a lesser range of statutory punishment than the indictment, and that's
> why we did that.

(Doc. 45 at 33, 34). The only comment Petitioner Walker made at his § 2255 hearing, when asked

why he entered a plea to an information, was:

> Well, I was under the impression that I had no viable defense. Like I
> said earlier, I was under the impression that buying it was a crime and
> viewing it was a crime, and I had no viable defense and a plea was my
> only choice.

*Id.* at 85. Petitioner Walker made no mention of publicity being a concern in the matter. Moreover,

paragraph (4) of Walker's Plea Agreement with the Government, as stated heretofore, provided:

> In exchange for the consideration set forth in Paragraph (3) above, the
> United States Attorney for the Middle District of Georgia agrees as
> follows:
> **(A) That he will accept the plea of guilty by Defendant as
> provided in Paragraph (3)(A), above, in full satisfaction of all
> possible federal criminal charges, known to the United States
> Attorney at the time of Defendant's guilty plea, which might have
> been brought solely in this district against the Defendant.**
> (emphasis in original).

Additionally, Petitioner cites no authority for the proposition that waiving an indictment in lieu of an information based upon case strategy is in any way ineffective assistance of counsel. Petitioner's claim in this regard, if it is a claim, is without merit.

In **Ground Two,** Petitioner Walker again asserts ineffective assistance of counsel, stating:

> Counsel permitted Petitioner to plead guilty when court violated Rule 11. Court failed to fully explore the nature of the medication Petitioner was taking at the time Petitioner waived his rights and pleaded guilty. Petitioner's plea was not knowingly and voluntarily given. At the time Petitioner entered his plea, he was under the influence of Zoloft and Collonnapins which was prescribed by a psychiatrist who thought Petitioner was depressed and mentally impaired.

At the plea hearing on August 23, 2007, the Court asked Petitioner Walker if he was under the influence of any drugs or intoxicants, and Walker answered, "Zoloft." When the Court asked him what that was, he answered, "It is an antidepressant." Walker told the Court that he took it regularly. When the Court asked him how long he had been taking it, Walker's Attorney Edwards stated, "About three weeks ago he began seeing a doctor." The Court asked Mr. Edwards if he had sensed that Mr. Walker's judgment was impaired as a result of taking this Zoloft, Edwards answered:

> None at all, Your Honor. I've spoken to Mr. Walker for a long time this morning, and I feel he is completely lucid and full capacity, and Mr. Crane has spoken to the two of us as well.

(Doc. 23 at 10, 11). The Court then asked Mr. Walker if his mind was clear right then, if he understood where we were and what we are doing, and if he had any questions about what they were doing. Walker affirmed that his mind was clear and he knew where they were and

what they were doing, and that he had no questions about what they were doing. *Id.* at 11. The Court then asked Walker if he had any history of mental or emotional illness, and Walker answered that he did not. The court asked if the Zoloft had been prescribed and Walker answered that it had been prescribed by a psychiatrist. Attorney Edwards then added that Walker had never been to a doctor before three weeks ago for any kind of depression treatment, he believed, and Walker added, "No." *Id.* at 11, 12.

A Pre-Sentence Investigation was made in preparation for sentencing subsequent to Petitioner Walker's guilty plea. Paragraph 48 of the PSI reported, based upon information furnished by Petitioner Walker, the following:

> Since June of 2007, the defendant has been treated by Dr. Bravish Patel in Valdosta, Georgia. Dr. Patel has diagnosed the defendant with majory depressive disorder and anxiety disorder. The defendant has recently begun one-on-one counseling sessions and has been prescribed Zoloft, 100 mg. per day, and Klonopin, 15 mg. per day, as needed. The defendant reports no prior history of mental health problems. Subsequent to being charged in the instant federal offense, the defendant voluntarily submitted to a psycho-sexual evaluation with Dr. Alvin Butler, in Gainesville, Florida. Dr. Butler evaluated the defendant and diagnosed him with AXIS I: Paraphilia NOS Attraction to ad Viewing of Sexually Explicit Images of Post-Pubescent Adolescent Females: AXIS II: Obsessive-compulsive Features. The doctor reported that the defendant recognized that he has a problem with obsessive use of internet pornography and fascination with adolescent females. He further reported that the defendant understands that this is wrong, but found the defendant to be a relatively low risk of reoffense. He also found the defendant to be amenable for treatment.

PSI at pp. 7,8. Nowhere in the record is there any evidence that Petitioner Walker was mentally impaired as he suggests in his Ground Two statement. To the contrary, his treating

psychologist, Dr. Mark Webb's letter attached as an exhibit to Petitioner's PSI Objections

(Doc. 10), states:

> This letter is to acknowledge that Ferrell Walker is currently in
> counseling with myself and receiving psychiatric assistance
> through Bravesh Patel, M.D. for Major Depressive Disorder.
> His depressive symptoms have emerged as a result of his legal
> stressors.

(Doc. 10-2). There is no evidence in the record nor any presented at § 2255 hearing that the

anti-depressants Zoloft or Klonopin had any adverse effect on Petitioner Walker's ability to

knowingly, voluntarily, and understandingly enter his plea of guilty to the Information

charging him with possession of child pornography in this case. Petitioner's Ground Two

is without merit.

Petitioner's **Ground Three,** a further claim of ineffective assistance of counsel, states:

> Counsel permitted petitioner to plead guilty when Court violated
> Fed.R.Crim.P.11. Court failed to provide Petitioner with notice of
> the special conditions related to the 25 years term of supervised release
> imposed for Petitioner; offense and conditions were not in the
> guidelines. Court failed to provide through discussion why it was
> necessary to take all prescribed medication and require Petitioner to
> submit to penile plethsmograph testing as special conditions of the 25
> year term of supervised release.

Petitioner Walker misplaces his complaint of the Court's treatment of Rule 11 as to the

special conditions of the terms of Petitioner's supervised release as pronounced by the Court

at sentencing. Rule 11 relates to the acceptance to pleas and the treatment of plea agreements

between the defendant and the Government. Petitioner has not shown any evidence of a

violation of Rule 11 in connection with the supervised release terms of the Court's sentence,

which is statutorily governed by the provisions of 18 U.S.C. § 3583. This statute, titled

**Inclusion of a term of supervised release after imprisonment**, contains no provision requiring prior notice to the defendant to be sentenced nor explanation to the defendant of the court's discretion as to special conditions, although the record is replete with more than sufficient cause. The statute at § 3583(k) specifies that a term of supervised release of any term of years not less than five, or life is authorized for violators of 18 U.S.C. § 2252. Petitioner's contention in his Ground Three that his counsel was ineffective is unexplained, but also inexplicable inasmuch as counsel could have had no prior knowledge of the terms of the court's sentence and supervised release terms. Petitioner has failed to state a claim in his Ground Three upon which relief may be granted.

Petitioner's **Ground Four** has heretofore been shown to have been withdrawn.

**WHEREFORE, IT IS RECOMMENDED,** upon all of the findings made above, that Petitioner Walker's Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be DENIED. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN FOURTEEN (14) DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 24th day of May 2010.

> **S/ G. MALLON FAIRCLOTH**
> **UNITED STATES MAGISTRATE JUDGE**